People v Martinez (2022 NY Slip Op 00880)





People v Martinez


2022 NY Slip Op 00880


Decided on February 9, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 9, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ROBERT J. MILLER
LARA J. GENOVESI
DEBORAH A. DOWLING, JJ.


2019-13541
 (Ind. No. 2450/17)

[*1]The People of the State of New York, respondent,
v
Kevin Martinez, appellant.


Janet E. Sabel, New York, NY (Jonathan Garelick of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Nancy Fitzpatrick Talcott, Margaret Iocco, and Rebecca Nealon of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Deborah Stevens Modica, J.), rendered October 30, 2019, convicting him of burglary in the second degree and criminal contempt in the second degree, upon his plea of guilty, and sentencing him to a determinate term of imprisonment of five years, to be followed by a period of postrelease supervision of five years, on the conviction of burglary in the second degree, and a concurrent definite term of incarceration of one year on the conviction of criminal contempt in the second degree.
ORDERED that the judgment is modified, on the law and as a matter of discretion in the interest of justice, by vacating the sentences imposed; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings in accordance herewith.
The defendant was charged under Queens County Indictment No. 2450/17 with, inter alia, burglary in the second degree (Penal Law § 140.25[2]), criminal contempt in the first degree (id. § 215.51), and attempted assault in the third degree (id. §§ 110.00, 120.00[1]).
At a proceeding before the Supreme Court on July 11, 2018, the court stated: "We received yesterday from [the defendant] an acceptance from the Acacia Network Program, and it contains the conditions of the program that [the defendant] has to meet." The defendant indicated that he had read this document. The court continued: "So the offer was a burglary in the second degree and a misdemeanor of criminal contempt in the second degree . . . Then the defendant goes into the program. And if he successfully completes it, we'll vacate the plea on the burglary in the second degree and he will be left with the A misdemeanor." The court promised the defendant that under that scenario he would receive a "conditional discharge" on the misdemeanor contempt count. However, the court indicated that if the defendant "fail[ed]" the program, then he would be sentenced as a "predicate felon" to a term of five years' imprisonment on the burglary conviction.
The defendant was sworn in, and stated that he wanted to plead guilty to burglary in the second degree and criminal contempt in the second degree in accordance with the plea [*2]agreement. The Supreme Court stated that the defendant was also required "to attend and complete the program from Acacia Network, A-C-A-C-I-A, which is a residential program." The court instructed the defendant: "[y]ou have to bring back proof to the Court that you're doing it during the course of the program. And if you successfully complete it, then the burglary plea will be completely vacated." The court also instructed the defendant that he could not be "rearrested for any reason during this period of time" and that he had to "obey the order of protection." The court explained that if the defendant "violate[d] one of those conditions, then [he would] not get the plea of guilty to the burglary vacated." Under such circumstances, the court stated that it would sentence the defendant "to five years in jail . . . plus five years of post-release supervision" on the burglary conviction.
At a later proceeding before the same court held on February 25, 2019, defense counsel requested that the defendant receive the promised disposition, as the defendant had successfully complied with each of the three conditions of the plea agreement that were set forth on the record by the court at the plea proceeding. In this regard, defense counsel contended that the defendant "completed the basic program and . . . complied with the [other] conditions of the plea."
The Supreme Court responded that the first condition could not be fulfilled by completion of "a very short program." The court stated that it was impossible to "rehabilitate . . . an addiction with a very short program." The court went on to state that "the updates" it had received indicated that the defendant "had a very spotty record in terms of complying with what he has to do here." The court stated that the defendant had tested "positive in December [2018] for heroin and cocaine" and "the most recent report . . . said that he needs improvement in attitude towards treatment."
The Supreme Court stated "I am not going to vacate the plea on [the] felony absolutely not." The court went on to state that "[w]hatever the minutes say they say but it did not include any understanding by me that it was going to be . . . the short program." The court continued: "So we have a couple of possibilities. One is to continue and continue to get updates if he wishes to get towards that misdemeanor. That is one option. The second option is that I sentence him right now if he does not want to continue with the program on the felony. And the third option is that I give you your plea back and we go to trial. Those are the 3 options. One of those options is not vacating the felony plea."
The assistant district attorney next addressed the court and stated that "the first 3 months were [an] inpatient detox program." The next 9 months involved an out-patient program. The defendant did "very well in the drug treatment program when he was there for 3 months." The assistant district attorney stated that "the People [were] not seeking to impose a sentence on the felony" at that time.
Defense counsel reiterated that the defendant was "in compliance" with the conditions of the plea agreement. Defense counsel argued that the defendant completed "[t]he basic residential program" from July to October 2018, and that he was "favorably discharged on October 12." Defense counsel noted that there was no allegation that the defendant did not comply with the "residential program." Defense counsel argued that the alleged "[n]on compliance came after [the defendant was] favorably discharged from the [residential] program."
Defense counsel stated that according to his notes, once the defendant completed the residential program, he satisfied the first condition of the plea agreement, but that he "would like to order the minutes" of the plea proceeding to confirm the terms of the plea agreement. The Supreme Court granted defense counsel's application and set another court date.
The next court appearance occurred on October 30, 2019, before the same court. As relevant here, defense counsel asserted that the terms of the plea agreement were "ambiguous at best." Defense counsel stated that the Supreme Court had specifically referenced an "in-patient program" at the plea proceeding, and that the defendant successfully completed the 90-day in-patient program.
The Supreme Court admonished defense counsel, stating that it was "offensive for [him] to continue to say that it is not clear what the expectations were here." The court continued: "to say [the defendant] is the one guy out of all those people who have appeared in Court and have been explained in detail what the expectations of a conditional plea are . . . flies in the face of what actually took place here." Finally, the court concluded that the defendant "lied to the probation officer in addition to everything else" by denying his guilt during his interview with the Department of Probation.
Defense counsel requested a hearing as to whether the defendant had complied with the terms of the plea agreement. This application was denied. The defendant then addressed the court directly, and defense counsel stated on the record that the defendant was acting "against [counsel's] advice at this point." The defendant stated that he "was in the program" and that he "did do [his] part." The defendant stated that he did not understand "why the program [was] still open."
The Supreme Court sentenced the defendant, in effect, as a predicate felon, to a determinate term of imprisonment of five years, to be followed by a period of postrelease supervision of five years, on conviction of burglary in the second degree, and a concurrent definite term of incarceration of one year on the conviction of criminal contempt in the second degree. The court advised the defendant that if he failed to follow the conditions of postrelease supervision, he could be subject to additional periods of incarceration.
On appeal, the defendant contends, among other things, that he complied with the terms of the plea agreement, and that the Supreme Court erred in imposing the enhanced sentence. As fully described above, this issue was repeatedly raised before the sentencing court by defense counsel, who "made his position with respect to the ruling . . . known to the court" (CPL 470.05[2]; cf. People v Stowe, 15 AD3d 597, 598). Contrary to the People's contention, this issue was preserved for appellate review (see CPL 470.05[2]). Furthermore, the record does not demonstrate that the defendant knowingly, intelligently, and voluntarily waived his right to withdraw his plea (see People v Rushlow, 137 AD3d 1482, 1483-1484; People v Lewis, 98 AD3d 1186, 1186-1187).
"Conditions agreed upon as part of a plea bargain are generally enforceable, unless violative of statute or public policy" (People v Hicks, 98 NY2d 185, 188). Furthermore, "[i]t is well established that the violation of an explicit and objective plea condition that was accepted by the defendant can result in the imposition of an enhanced sentence" (People v Becker, 80 AD3d 795, 796; see People v Ramirez, 175 AD3d 569, 570). "Due process requires that, before imposing an enhanced sentence, the court conduct an inquiry sufficient for it to determine that the defendant indeed violated the plea condition" (People v Murdock, 175 AD3d 1560, 1561; see People v Valencia, 3 NY3d 714, 715; People v Outley, 80 NY2d 702, 712; see also Torres v Berbary, 340 F3d 63 [2d Cir]).
Here, the Supreme Court erred in imposing an enhanced sentence based on its conclusion that the defendant violated a condition of the plea agreement. It was undisputed that the defendant successfully completed the 90-day in-patient residential program, which was the only specific program identified by the court at the plea proceeding. Indeed, the court's actual instruction to the defendant at the plea proceeding was to "complete the . . . residential program." The court did not indicate at the plea proceeding that the defendant would be subject to continuous and open-ended treatment, or that a single positive drug test at any time would constitute a violation of the plea agreement. While the court referenced "the conditions of the program" at the beginning of the plea proceeding, there was no subsequent reference in the record to these conditions, and no allegation that the defendant breached any of them. Although the court could have directed the defendant to successfully engage in ongoing treatment up until the date of the sentence, it did not explicitly impose such a condition here (see generally People v Garcia, 130 AD3d 643, 644). The court "never stated" that the defendant was required to continue his treatment beyond the residential program identified on the record (People v Jenkins, 11 NY3d 282, 289; see People v Gabbidon, 96 AD3d 1235, 1236), and "only the failure to comply with explicit conditions can form the basis of a violation" (People v Becker, 80 AD3d at 796; see People v Rushlow, 137 AD3d at 1483-1484; People v Garcia, 130 AD3d at 644; People v Lewis, 98 AD3d at 1186-1187). Similarly, while a [*3]court is generally free to impose a condition requiring a defendant not to deny his or her guilt when interviewed by the Department of Probation, "the Supreme Court in the instant matter did not impose such a condition" (People v Pianaforte, 126 AD3d 815, 816-817; cf. People v Ramirez, 175 AD3d at 570). In sum, "the court erred in imposing an enhanced sentence based on its conclusion that the defendant violated a condition of the negotiated plea agreement" (People v Carrasquillo, 133 AD3d 774, 775; see People v Garcia, 130 AD3d at 644; People v Pianaforte, 126 AD3d at 816; People v Zeldine, 121 AD3d 928, 929).
Under the circumstances, we vacate the sentences and remit the matter to the Supreme Court, Queens County, to allow the court to impose the disposition promised to the defendant at the time of his plea (see People v Carrasquillo, 133 AD3d at 775; People v Garcia, 130 AD3d at 644; People v Pianaforte, 126 AD3d at 816; People v Zeldine, 121 AD3d at 929; cf. People v Becker, 80 AD3d at 797). In light of the foregoing, we need not reach the parties' remaining contentions.
DILLON, J.P., MILLER, GENOVESI and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court